757 So.2d 824 (2000)
Barry Dean BALL, Plaintiff-Appellee,
v.
Karen Suzanne Holifield BALL, Defendant-Appellant.
No. 32,851-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2000.
Rehearing Denied March 30, 2000.
*825 James A. Hobbs, West Monroe, Counsel for Appellant.
Alan James Norris, Shreveport, Stephen P. Dupuy, Monroe, Counsel for Appellee.
Before WILLIAMS, CARAWAY and DREW, JJ.
CARAWAY, J.
This community property partition dispute primarily concerns reimbursement for mortgage payments made by the spouse who enjoyed the occupancy of the family residence after divorce until the time of this partition. One spouse appealed this issue and the other spouse answered raising other issues on the trial court's accounting for the community property. Based upon our review, we affirm in part and amend in part the community property partition.

Facts
Barry Ball ("Barry") and Karen Ball (now Franklin) ("Karen") were married on March 2, 1975. On January 9, 1995, Barry and Karen physically separated and Barry filed for divorce on January 11, 1995. Judgment of divorce was rendered between the parties on August 16, 1995 terminating the community of acquets and gains existing between them retroactive to January 11, 1995.
*826 On January 5, 1996, Barry filed a petition for partition of the community property and also sought an accounting from Karen of the property in her possession which belonged to the former community and a settlement of the accounts existing between Barry's separate estate and the former community. Trial was not completed until December 5, 1997.
In its reasons for judgment, the trial court determined that in light of the values of the property each party was allocated, an equalizing payment was necessary from Barry to Karen to achieve an equal division of the community property. Barry contended in a letter to the court on August 4, 1998 that the court had made a calculation error in the equalizing payment. However, because the trial court did not correct the error when an initial judgment was rendered on January 7, 1999, Barry filed a motion for a new trial. Following hearing on this motion, the trial court modified the equalizing payment in the amended judgment of February 3, 1999, reducing it to $12,788.58. The trial court awarded interest on the equalization payment due from Barry to Karen from the date of Barry's judicial demand.
Also in the written reasons for judgment, the trial court allowed certain reimbursement claims to each party, while denying others. In particular, the trial court denied Barry's claim for Karen to pay rent for her occupancy in the family residence. Nevertheless, the court found that Karen's new husband, Tom Franklin ("Franklin"), had also lived in the home and had made monthly payments on the home mortgage. The court therefore denied Karen's reimbursement claim for one-half of those mortgage payments. The trial court further valued the community bank accounts at $23,479.30, the balance in the accounts on the date the divorce was filed, instead of $17,346.96, the balance in the accounts at the time of trial. These accounts were awarded to Karen, and Barry was ordered to make up the decrease in balances of the accounts.
Both parties have appealed various rulings by the trial court in the accounting for and the division of the community property.

Discussion
In community property partitions, the trial court is granted much discretion in valuing and allocating assets and liabilities and is required to consider the source and nature of each asset or liability, the financial situation of the other spouse, and any other relevant circumstances. La. R.S. 9:2801 et seq.; Bedenbender v. Bedenbender, 28,579 (La.App.2d Cir.8/21/96), 679 So.2d 506. Given this great discretion, the trial court is not required to accept at face value a spouse's valuation of assets or debts, or claims against the community. Bedenbender, supra. An appellate court may not set aside a trial court's factual findings absent manifest error or unless clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993).

Reimbursement for Mortgage Payments
Karen argues that the trial court erred in denying her certain reimbursement claims for mortgage payments. In a judgment of the court on March 28, 1995 fixing child support and alimony pendente lite, Karen was granted the use of the home and contents. The ruling also provided that Karen would pay the mortgage note on the home. The arrangement continued after the August 1995 divorce, and the trial court in this partition proceeding awarded Karen reimbursement for one-half of the mortgage payments that she made from April 1995 through the end of 1995. That amount of reimbursement that Barry owes Karen is not disputed by Barry.
Beginning in early 1996, the record shows that Franklin paid the monthly mortgage payments. From that time until May 31, 1996 when Franklin and Karen were married, Franklin paid three installments by checks drawn on his account. *827 Beginning with a check dated May 31, 1996, the mortgage company was paid by checks drawn on the joint checking account of Franklin and Karen, with Franklin signing each check. The amount of payments from 1996 through the time of trial that were made from these checking accounts totaled $22,809.44.
At trial, while acknowledging the mortgage indebtedness as a community obligation, Barry disputed that the $22,809.44 was paid with the separate property of Karen, and additionally, Barry presented evidence that the rental value of the home was approximately equal to the amount of the monthly installments on the mortgage debt. Barry thus argued that no reimbursement under La. C.C. art. 2365[1] is due for the mortgage payments made by Franklin.
Citing McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280, the trial court ruled on Karen's reimbursement claim as follows:
"The Court finds that, just as Mr. Ball [because of McCarroll] was denied rental payments from Mr. and Mrs. Franklin, Mr. Franklin and Mrs. Franklin should be denied reimbursement for one-half the mortgage payments. Mr. Franklin lived there and he got equal value for his money, since the rental value and the mortgage payments were equal."
The resolution of this matter involves both the law concerning the use of the coowned family residence and the reimbursement right under La. C.C. art. 2365. After termination of the community property regime, the provisions governing co-ownership apply to former community property, unless otherwise provided by law. La. C.C. art. 2369.1. The special provision governing co-ownership of the family residence prior to the partition of the community is La. R.S. 9:374(C), which provides as follows:
"A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court."
In McCarroll, supra, the Louisiana Supreme Court reviewed the law of co-ownership and La. R.S. 9:374(C) noting the general rule that "the right of co-owners to possession of the property being equal and co-extensive, neither becomes indebted to the other for his personal occupancy." Id. p. 1290, citing Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955). La. R.S. 9:374 reflects that general rule but provides that the court may award one spouse occupancy to resolve any dispute over the use of the family residence pending a partition. La. R.S. 9:374(B). In interpreting La. R.S. 9:374(C), the court specifically barred the retroactive assessment of rent to a spouse whose occupancy was not the result of an agreement by the spouses or court order. "There is no corollary prejudice to the non-occupying spouse under this interpretation of the statute, since that spouse has the ability to invoke a court proceeding to determine occupancy and rent at any time." McCarroll, supra p. 1290. Moreover, following the termination of the community, the remedy of the co-owner spouse out of possession is partition.
Although the trial court recognized that Barry was not entitled to a retroactive rent assessment against Karen under the McCarroll ruling, the court nevertheless effectively assessed Franklin rent for his occupancy of the residence with Karen and *828 compensated Barry for that assessment by denying Karen the reimbursement right under La. C.C. art. 2365 for her payment of the mortgage debt. This ruling indirectly and retroactively assessed Karen for rent and was error. Karen as a co-owner was the occupant of the home. Any of her family members who lived with her in her home, whether a new husband, children or other family member unrelated to Barry, may share the occupancy with Karen without paying rent to Karen and Barry. Any protest over the appropriateness and continuation of the occupancy of Karen and her family must be made pursuant to La. R.S. 9:374. Through that process only may Karen and her family be removed from occupancy or charged rent.
Despite the flaw in the trial court's ruling, Barry argues nevertheless that Karen was not entitled to reimbursement under La. C.C. art. 2365 because she failed to prove that she paid the community mortgage indebtedness with her separate property. Barry asserts that Franklin's checks to the mortgage company do not evidence Karen's payment. Under La. C.C. art. 2365, the party demanding reimbursement must show that separate funds have been used to satisfy the community obligation. Sims v. Sims, 28,470 (La.App.2d Cir.6/26/96), 677 So.2d 663; Oliver v. Oliver, 561 So.2d 908 (La.App. 2d Cir.1990).
From our review of the testimony and accounting data, the mortgage payments made from Karen's joint account with Franklin after her remarriage are sufficient evidence to entitle her to reimbursement. The joint checking account was the community property of Karen's new marriage. Such property, acquired after her marriage with Barry, was separate from the former community and used as her separate property to reduce the solidary home mortgage obligation of herself and Barry which was their community debt. The right of reimbursement under Article 2365, like the right of legal subrogation under La. C.C. art. 1829(3), should apply to allow Karen recourse for these payments which reduced Barry's share of the indebtedness for the community obligation of the former marriage.
Nevertheless, for three payments made by Franklin from his separate account prior to his marriage to Karen, we find that Karen's right to reimbursement has not been shown. Any claim for reimbursement that Franklin might have for the payment of the debt of another is not the subject of this suit.
In summary, the amount of payments made on the mortgage indebtedness from the joint account of Karen and Franklin totaled $18,084.59.[2] One-half of that amount, or $9,042.30, is Karen's claim for reimbursement, and the trial court's judgment is amended to reflect this amount.

Interest on Equalizing Payment
Barry urges that the trial court erred when it awarded interest on the equalization payment due from Barry to Karen from the date of judicial demand instead of from the date of judgment. We agree.
There was a split in the courts of appeal on whether interest on an equalizing payment was due from the date of judgment or from the date of judicial demand. This issue was recently resolved by the Louisiana Supreme Court in Reinhardt v. Reinhardt, 99-0723 (La.10/19/99), 748 So.2d 423 which held that "prejudgment interest is not due on equalizing payments made under La. R.S. 9:2801, even where part of the equalizing payment can be traced to a reimbursement claim for sums advanced during the marriage from the separate property of one spouse. Interest on equalizing payments is due only from the date of the judgment of partition."
*829 Accordingly, we hereby amend the judgment to delete the award for prejudgment interest.

Difference in Account Value
Barry complains that the trial court valued the Central Bank accounts at $23,479.30, as of January 11, 1995, the date of termination of the community. The balance of these checking and savings accounts as of the date of the trial was $17,346.96. In awarding these accounts to Karen, the trial court ordered Barry to make up the difference in these values.
La. R.S. 9:2801(4)(a) provides that the court shall value the assets for the partition as of the time of trial on the merits. Nevertheless, the trial court properly reasoned that at the time of trial these cash accounts should have maintained at least the same value that they had at termination of the community.
The reason for the decrease in the accounts was because of Barry's utilization of the accounts after the time he filed for divorce on January 11, 1995. It was only after his counsel informed him of the community nature of these accounts that he opened a separate account to use for his personal expenses.
Because the trial court's valuation of these cash accounts was appropriate, it was incumbent upon Barry to demonstrate, if he could, that his withdrawals from the accounts pending the divorce served to benefit the community as a whole. Barry did not make such an accounting for these funds. Therefore, the trial court's ruling in determining the value of these accounts was correct.

Quilts
Barry urges that the trial court erred in failing to allocate two quilts to him which were made by his grandmother after previously ruling that the quilts would be given to him. The quilts had apparently been given to the couple at some point during the marriage. We did find in the court minutes of December 5, 1997 that the trial court stated that these quilts would be returned to Barry.
In joint exhibit C which is a master list of household items, these quilts are apparently listed under "homemade quilts" in Karen's possession and valued at $450. In Karen's exhibit 43 which is a photocopy of the master list of household items with the items highlighted that Karen did not want (dubbed the "unwanted 16" by the trial court), Karen highlighted this homemade quilt item and noted that two of the quilts were made by Barry's mother and grandmother. From this notation, we surmise that there were more than the two quilts in this $450 valuation. Karen admits that she does not want the quilts but states that she was charged with their value in the partition and therefore argues that it would be unfair to simply "give" them to Barry. Because these quilts obviously have sentimental value to Barry and Karen has explicitly stated that she does not want them, we amend the partition to award the quilts to Barry and increase the equalizing payment which he will owe Karen by the $300 value of the quilts.

Court Costs
Barry complains that the trial court assessed him all court costs of the proceeding. The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court, La. C.C.P. art. 1920, and its allocation of those costs will not be disturbed absent evidence of an abuse of that discretion. McConathy v. McConathy, 25,542 (La. App.2d Cir.2/23/94), 632 So.2d 1200, writ denied, 94-0750 (La.5/6/94), 637 So.2d 1052. While it is a general rule that the party cast in judgment should be taxed with costs, the trial court may assess costs of a suit in any equitable manner. La. C.C.P. art. 1920; Polk Chevrolet, Inc. v. Webb, 572 So.2d 1112 (La.App. 1st Cir. 1990), writ denied, 575 So.2d 394 (La. 1991).
Barry claims that the trial court did not give a single reason for assessing him these costs. However, we note in the trial *830 court's reasons for judgment that it found Barry had carefully planned this separation from Karen and had sold or withdrawn a fairly sizeable amount of community stocks and cash in the three months preceding the separation for which he had not been ordered to account. Considering the entire record, we do not find that the assessment of court costs to Barry for the proceeding was an abuse of the trial court's discretion.

Computation of Equalizing Payment
Based upon the foregoing rulings concerning the reimbursement of Karen's mortgage payments and the award of the quilts, we amend the trial court's computation of the payment due from Barry to Karen, as follows:

Partition of Assets:
 Total net assets received by Barry
 (including $300 for 2 homemade
 quilts) $132,397.14[3]
 Total net assets received by Karen $113,047.01
 ___________
 Difference $ 19,350.13
 Equalizing Payment due from Barry
 to Karen (½ of $19,350.13) $ 9,675.07
Reimbursements:
 Due to Karen as allowed by trial
 court $ 5,158.01
 Additional mortgage reimbursement
 claims to Karen on appeal $ 9,042.30
 Due to Barry as allowed by the trial
 court $ 1,104.50
 ___________
 Difference in reimbursement claims $ 13,095.81
 Total payment due from Barry to
 Karen (Equalizing payment plus difference
 in reimbursements) $ 22,770.88
 ===========

Conclusion
For the foregoing reasons, we hereby amend the trial court's judgment to award Barry the two family quilts and to reflect a payment due from Barry to Karen in the amount of $22,770.88 with interest thereon from the date this judgment becomes final. Except as herein amended, the trial court's decision is affirmed. Costs of this appeal shall be shared equally by the parties.
AFFIRMED IN PART, AMENDED IN PART AND RENDERED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, CARAWAY, and DREW, JJ.
Rehearing denied.
NOTES
[1] La. C.C. art. 2365 provides, in pertinent part, as follows:

If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
[2] The actual amount of payments totaled $18,984.59. However, we have reduced that amount by $900 in late fees which we have estimated from our review of the payments. Karen admitted that late fees were assessed for her untimely payments of the monthly installments.
[3] Initially, the trial court correctly listed the value of the net community assets (less the $44,729.36 mortgage indebtedness) at $245,444.15. The trial court's later allocation of the assets before computation of the equalizing payment erroneously awarded Karen $114,802.01 and Barry $132,272.14, or a total of $247,074,15. This calculation error by the trial court affects the amount of the equalizing payment which both parties have contested on appeal. When the trial court's double allocation of certain assets values to both parties is corrected, the trial court awarded $132,097.14 to Barry and $113,247.01 to Karen totaling the correct amount of $245,444.15. We adjust those awards above by $300 to reflect our amendment of the judgment concerning the award of the quilts.