IWILLIAM H. BYRNES, III, Chief Judge.
STATEMENT OF THE CASE
Raymond Washington filed suit on July 31, 1996 against his wife, Jessie Mock Washington, seeking a judgment of divorce dissolving their sixteen year, childless marriage, reserving his right to partition the community of acquets and gains then existing. Mr. Washington based his suit on the fact that he and his wife voluntarily lived separately and apart continuously for a period of more than six months.
*897 Mrs. Washington was served personally on October 10, 1996. The trial court entered a preliminary default on November 8,1996. On March 10,1997, the trial court confirmed the default and entered judgment granting Mr. Washington an absolute divorce from Mrs. Washington.
On October 17, 1996, Mrs. Washington filed a rule to establish permanent alimony, claiming freedom from fault in the divorce and necessitous circumstances. On the same day, she filed a petition for partition of the community, rental and educational reimbursement, and injunctive relief. Mr. ^Washington answered and reconvened, seeking partition of the community and reimbursement of one-half of mortgage payments made during the previous ten years and of funds he allegedly paid for Mrs. Washington’s separate obligations.
In August 2001, Mr. Washington amended his reconventional demand seeking reimbursement of one-half of mortgage payments made from August 1987 to August 2001, reimbursement to his separate estate and to the community of payments of Mrs. Washington’s separate obligations, and reimbursement of repairs and maintenance expenses relating to the matrimonial domicile.
The case was heard on September 14 and 17, 2001 and the trial court entered judgment finding Mrs. Washington was not free from fault in the break-up of the marriage and denying her claim for spousal support. The trial court found that Mr. Washington failed to prove that he was entitled to reimbursement for use of his separate property to satisfy community obligations. Furthermore, he failed to prove that community property was used to satisfy Mrs. Washington’s separate obligations. The trial court denied Mrs. Washington’s claim for rental reimbursement for Mr. Washington’s use and occupancy of the matrimonial domicile and her claim for contributions to his education and training. The trial court recognized the parties’ stipulations concerning use of community funds and partitioning of community assets as the judgment and order of the court. From that judgment both parties appeal.
STATEMENT OF FACTS
laMr. and Mrs. Washington were married on September 27,1980 and lived separate and apart without the benefit of a judgment of separation or divorce from July 18, 1987. On July 31, 1996, Mr. Washington filed a Petition for Divorce, and divorce was granted by judgment dated March 10,1997.
The trial court accepted Mr. Washington’s testimony concerning the break-up of the marriage. According to Mr. Washington, on July 17, 1987 his wife abandoned their home without cause or warning, refusing to return. That day, he left the house early in the day as part of his normal routine and returned after drill with his military[1] unit to find it vacant, stripped bare of furnishings, fixtures, window treatments, bed and bath linens, cookware, flatware, appliances, dinnerware, glassware and other household items. Furthermore, Mrs. Washington had discontinued the electrical and water service. The only furniture remaining in the house was a dining and kitchen set. Mrs. Washington left behind Mr. Washington’s military blanket on which he slept, one spoon, one fork and one plate. She took both their cars, leaving Mr. Washington no means of transportation. He then took a second job with the City of New Orleans in order to pay the *898 mortgage on the former matrimonial domicile.
Mr. Washington testified that he was unaware of Mrs. Washington’s unhappiness and intent to leave. While conceding that the couple occasionally argued, he denied that this bickering would warrant her abandoning the home. |4 According to Mr. Washington, their arguments arose from Mrs. Washington’s use of marijuana and her determination to live beyond their means.
Mrs. Washington testified that she abandoned the matrimonial domicile because her husband was abusing her physically. Mr. Washington admitted one occasion on which he struck his wife, maintaining that he was attempting to defend himself and restrain her after she attacked him in the bathroom while he was shaving. The trial court accepted Mr. Washington’s testimony that Mrs. Washington provoked Mr. Washington’s physical response when she attacked him, and found that any physical attack beyond self-defense was the result of his wife’s provocation.
The trial court found no credible evidence to corroborate Mrs. Washington’s allegation that her husband habitually abused her, physically and emotionally. Furthermore, the court noted that although Mrs. Washington claimed that Mr. Washington kicked her in another incident, Mrs. Washington testified that she did not speak to anyone about the abuse, seek medical or psychological attention or report the alleged abuse to the appropriate authorities. She claimed to have told her and Mr. Washington’s relatives about the alleged incidents, but no one was called to corroborate the claim. The court found that Mrs. Washington’s allegations of physical abuse, other than the altercation initiated by Mrs. Washington in Mr. Washington’s bathroom, were not substantiated. Therefore, the trial court concluded Mrs. Washington was not free from fault.
IsThe trial court found as a matter of law that Mr. Washington would be entitled to reimbursement of one-half of the value of his property used to satisfy his wife’s separate obligations and to satisfy community obligations. However, the court found as a matter of fact that Mr. Washington submitted no documentary evidence to substantiate his claims.
Mr. Washington testified that during the process of obtaining financing for the matrimonial domicile, he discovered that Mrs. Washington had failed to pay income taxes for a period of time before they were married.
The trial court found no evidence of an agreement of the parties or a court order imposing a rental obligation on Mr. Washington arising out of his use and occupancy of the matrimonial domicile.
The trial court found that Mrs. Washington’s claim for reimbursement of contributions made toward her husband’s education was made on October 22, 2001, more than three years after the March 10, 1997 judgment of divorce.
On September 14, 2001 the parties filed a joint descriptive list of community assets and liabilities. The parties failed to agree on the following assets:
1. Value of matrimonial domicile: Mr. Washington values at $75,000 and Mrs. Washington values at $88,000;
2. Mr. Washington’s Charity Hospital retirement plan: Mr. Washington values at $24,603.42 and Mrs. Washington states the value as “unknown;”
3. Furniture in matrimonial domicile: Mr. Washington values at $650 and Mrs. Washington values at $6,000;
*899 |r4. Wedding gifts: Mr. Washington values at $1,000 and Mrs. Washington values at $250.
The parties failed to agree on the following claimed reimbursements:
1. By Mr. Washington:
a. Mr. Washington’s separate funds used to make down payment on matrimonial domicile: $500
b. Loan to pay off IRS lien on Mrs. Washington’s separate property: $5,000
c. Payment for fur coat: $200
d. Repairs to Mrs. Washington’s car: $1,823.49
e. Improvements to Mrs. Washington’s Pauger Street property: $120
f. Separate property deferred compensation drawn down during marriage and used as income: $7,752.50
g. Separate property pension drawn down during marriage: $1,731.35
h. Mortgage payments for Pauger Street property: $1,396.95
i. Improvements to matrimonial domicile: $10,471.69
j. Income tax owed by Mrs. Washington: $300
k. Mortgage payments on matrimonial domicile: $69,699
2. By Mrs. Washington:
a. Rental reimbursement from August 1996 through August 2001: $45,000
b. Contribution to Mr. Washington’s education: $45,000
|7c. Mortgage payments on matrimonial domicile: $24,000
At trial, the parties stipulated that:
1.Mr. Washington’s Charity Hospital retirement plan and his military retirement benefits will be divided equally between the parties pursuant to the Simms formula, taking into account the years of Mr. Washington’s participation in the program and the years of the couple’s marriage.
2. The following assets are considered community property, at the values indicated, and are allocated to Mr. Washington:
a. Liberty Bank & Trust account 4356594: $1,031.78
b. Previously liquidated Savings Bonds: $8,500.00
c. Savings Bonds: $3,000.00
3. The following assets are considered community property, at the values indicated, and are allocated to Mrs. Washington:
a. Liberty Bank & Trust account 5101282481: $150.98
b. Fidelity . Homestead account: $567.55
4. The furniture acquired during the marriage by either party shall not be at issue in the community property partition, with each party retaining possession of any furniture and miscellaneous movables in his or her possession or control, with the exception of any wedding gifts, which shall remain an issue until resolved by the trial court.
5. The parties’ only liability is the mortgage on the former matrimonial domicile: $43,847.81.
I «6. Mr. Washington paid $48,000 towards the mortgage from July 31, 1996, the date the marriage was terminated.
7. Mrs. Washington owes Mr. Washington $200 reimbursement for her fur coat and $120 for improvements to her separate property.
Counsel for the parties agreed at trial that the only outstanding issues were:
1. The value of the matrimonial domicile
2. The value of wedding gifts
3. Reimbursement to Mrs. Washington of contributions to Mr. Washington’s education
*900 4. Mrs. Washington’s entitlement to permanent alimony.
The trial court accepted the appraisal of the former matrimonial domicile performed by Jefferson Parish Appraisal Service.
Mrs. Washington testified that there were few if any wedding gifts because the wedding was held while the couple was in the process of buying their home, and had no money for a large wedding. Mr. Washington testified that there were about 150 to 200 guests at the wedding, which was given in a dance hall. According to Mr. Washington, the couple received “all types of gifts,” including toasters, china and stemware, all of which were taken by Mrs. Washington when she abandoned the matrimonial domicile. The trial court granted Mr. Washington $500 reimbursement for his share of the value of the wedding gifts. Mrs. Washington has not assigned error as to this portion of the trial court judgment.
| .STANDARD OF REVIEW
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Where there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings. Where a fact finder’s finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989). See also, Hill v. Morehouse Parish Police Jury, 95-1100 (La.1/16/96), p. 4, 666 So.2d 612, 614. Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
We are instructed that before a fact-finder’s verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong. Lewis v. State Through Dept. of Transp. and Development, 94-2370 (La.4/21/95), 654 So.2d 311, 314; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Athough we accord deference to the fact finder, we are Incognizant of our constitutional duty to review facts[2], not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221; Ferrell v. Fireman’s Fund Ins. Co., 94-1252 (La.2/20/95), 650 So.2d 742, 745.
Where trial court errors have tainted the fact finding process as to one or more issues and the record is complete, the appellate court may make a de novo review of the record and determine the preponderance of the evidence. See, Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975).
*901 MR. WASHINGTON’S FIRST AND FOURTH ASSIGNMENTS OF ERROR: The trial court erred in denying his claim for reimbursement of his separate property used for necessary improvements to the former matrimonial domicile. The trial court erred in denying his claim to reimbursement of community funds used to satisfy his wife’s separate obligations.
Interspousal obligations for reimbursement are provided for in Title VI of the Louisiana Civil Code, “Matrimonial Regimes.”
If separate property of a spouse has been used for the improvement of community property, that spouse upon termination of the community property is entitled to one-half of the amount or value that the property had at the time it was used. The liability of the spouse who owes reimbursement is limited to the value |nof his share in the community after deduction of all community obligations. La.C.C. art. 2367.
If a spouse’s separate property has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations. La.C.C. art. 2365. However, if the community obligation was incurred for the ordinary and customary expenses of the marriage in keeping with the economic condition of the community, the spouse is entitled to reimbursement from the other spouse regardless of the value of that spouse’s share of the community. Id.
If community property funds have been used to satisfy a spouse’s separate obligation, upon termination of the community property regime, the other spouse is entitled to reimbursement of one-half of the amount or value of the community property at the time it was used. La.C.C. art. 2364. Likewise, if community funds have been used for improvement of a spouse’s separate property, the other spouse is entitled upon termination of the community to one-half of the amount the community property had at the time it was used. La.C.C. art. 2366.
As the trial court noted in its reasons for judgment, Mr. Washington would be entitled as a matter of law to reimbursement, as provided by the Civil Code, of his portion of the repairs to the matrimonial domicile, the loan secured to pay off an IRS lien, mortgage payments on his wife’s separate property, automobile repairs, compensation and pension funds used during the marriage and income 112taxes paid from 1987 to termination of the community. However, the trial court found no evidence of any of these payments.
Mr. Washington submitted the following expenses incurred after the petition for divorce was filed[3]:
$293.66 for repair of swimming pool pump’s compressor and maintenance;
$43.45 to replace kitchen sink’s hose bib;
$121.35 to replace faucet and shower-head and repair toilet;
$50.00 to check air conditioner;
$200 for “pool man”
$100 for “pool man”
$25.00 and $125.00 to Michael Brown for fence repair
Checks drawn to Color Tile for $12.03
*902 Checks drawn in favor of Home Depot[4] bearing no indication of purpose in the amounts of $79.65, $16.18, $8.65, $38.49, $16.01, $11.45, $7.56, $31.27, $27.93, $9.17, $34.50, $53.72, $47.37, $18.32, $28.98, $30.91, $10.75, $48.94, $10.79, $49.55, $10.87, $14.07, $25.45, $100, $100.80, $75, $100, $32.22, $26.37, $75, $75.49, $4.32, $10.86, $15.42, $76.63 and $176.08
$211.00 for repairs to air conditioning system, with paid receipt showing replacement of parts
Checks drawn in favor of Kevin Gray and Gray Pool service for $100, $100, $293.66 (together with invoice for motor, shaft and seal) and $75
Checks drawn to illegible payees in the amounts of $47 and $300
$203.74 for Stanley Steamer
113Unpaid invoices from Kevin Gray for $370.58 for pool repairs and service[5]
Paid invoice from Technical Service for $150 for heater repair
Unpaid invoice for air conditioning service check
Illegible copy of invoice from Rooter Man dated December 22,1997
Paid invoice and check for $125.35 for repair to stopped-up sink.
We note that the trial judge asked that the evidence of Mr. Washington’s claim to reimbursement be submitted in globo, and counsel for Mr. Washington did not object to this method of handling the evidence. Furthermore, Mr. Washington did not provide proof that any of these checks represented the type of repairs for which he could receive reimbursement.
The parties stipulated to Mrs. Washington’s obligation to reimburse Mr. Washington $120 for improvements made to her separate property and $200 for her fur coat. It is impossible to determine from the exhibits in this record whether some or all of the checks represent payments supporting that stipulated obligation.
Our review of the record in its entirety supports the trial court’s determination that Mr. Washington failed to prove entitlement to reimbursements in addition to those stipulated by the parties. Given the trial court’s reasonable credibility choices, and the lack of testimonial or documentary proof that the checks were subject to reimbursement, we find no manifest error in the judgment as it relates to Mr. Washington’s claims for reimbursement
These assignments of error are without merit.
|14MR. WASHINGTON’S SECOND ASSIGNMENT OF ERROR: The trial court erred in denying his claim for reimbursement of separate property used to satisfy community obligations.
Mr. Washington did not brief his second assignment of error. This assignment of error is deemed abandoned. Rule 2-12.4, Uniform Rules — Courts of Appeal.
MR. WASHINGTON’S THIRD ASSIGNMENT OF ERROR: The trial court erred in refusing to admit evidence of his withdrawal of his state pension and deferred compensation to satisfy community obligations.
Mr. Washington produced a letter dated March 21, 1983 from the State of Louisiana Teacher’s Retirement System showing a balance in his account as of June 30,1982 of $3573.44. The letter enclosed at his request Form 7, Application for Return of Accumulated Contributions. *903 A copy of the completed Form 7, signed by Mr. Washington and requesting refund of his contributions on deposit, is also in the record. Mr. Washington submitted a statement showing his accumulated contributions as of June 30, 1981 in the amount of $2,502.38. He submitted two copies of a Form W-2 Wage and Tax Statement from the State of Louisiana Deferred Compensation commission showing wages, tips and other compensation for that year in the amount of $12,837.76. Attached is a notice from the Teacher’s Retirement System of Louisiana addressed to Mr. Washington advising that the System received his request for an invoice to restore previously refunded credit. He also submitted the 1977 report of the LSU Medical School Deferred Compensation Plan showing a deferred income of $248.42. The trial court ruled these documents inadmissible as irrelevant hearsay.
11sWhether admissible or not, these documents do not constitute evidence of record that any specific amount of Mr. Washington’s separate funds were used to pay his wife’s separate debts or obligations of the community. It appeared that during the marriage the spouses’ funds were commingled, there being examples of Mrs. Washington’s having signed checks drawn on Mr. Washington’s account as well as evidence that each spouse contributed to the general expenses incurred prior to and during the marriage.
We are unable to discern from this record the amount, if any, of Mr. Washington’s retirement funds used either to support the community or to pay Mrs. Washington’s separate obligations. Mr. Washington did not produce evidence of the amount of the retirement fund withdrawals or of their use. He produced no evidence of any retirement funds having been deposited in Mrs. Washington’s separate account or in a community account. Simply stated, the documents submitted by Mr. Washington, even had they been admitted by the trial court, failed to prove his entitlement to reimbursement.
This assignment of error is without merit.
MR. WASHINGTON’S FIFTH ASSIGNMENT OF ERROR: The trial court erred in refusing to admit evidence of community funds used to repair his wife’s separate property automobile.
Mr. Washington attempted to introduce a repair estimate to substantiate this reimbursement claim. However, the record contains no evidence that the repairs outlined in the estimate were in fact made, whether they were covered to any extent by insurance, that the car was Mrs. Washington’s separate property or that the community paid for the repairs. Absent such proof, Mr. Washington cannot | -| (¡receive reimbursement of his community interest in the unproved net cost of repairs.
This assignment of error is without merit.
MRS. WASHINGTON’S FIRST ASSIGNMENT OF ERROR: The trial court was manifestly erroneous in finding her to be at fault.
In a proceeding for divorce or thereafter, the court may award final periodic support to a party free from fault prior to the filing of a proceeding to terminate the marriage. La.C.C. art. 111. Revision Comment (c) of 1997 to this code article notes that fault continues to mean misconduct that rises to the level of one of the previously existing.fault grounds for legal separation or divorce; however, the fault that precludes an award of spousal support must have occurred prior to the filing of the institution of the action for divorce^ in this case, July 1996. This legal fault may include, among other actions, *904 habitual intemperance or excesses, cruel treatment or outrages, and abandonment. Mayes v. Mayes, 98-2228 (La.App. 1 Cir. 11/5/99), 743 So.2d 1257, 1259.
The existence vel non of fault is a factual question, and a trial court’s findings of fact on the issue of a spouse’s fault will not be disturbed on appeal unless found to be manifestly erroneous. Pearce v. Pearce, 348 So.2d 75, 77-78 (La.1977). It is our duty on appellate review to determine whether the record provides a reasonable basis for the trial court’s finding that Mrs. Washington was at fault to such a degree that she has lost her right to spousal support.
The record is clear that Mrs. Washington abandoned the matrimonial domicile, stripping it of all furnishings, appliances and accessories with the exception of a dining table, military blanket and one incomplete place setting of |17flatware and china, and terminating utility services. This abandonment alone is sufficient to constitute fault, so long as it was not caused by Mr. Washington’s own actions. Mrs. Washington testified that Mr. Washington’s physical and emotional abuse led to her abandonment of the matrimonial domicile.[6]
Mrs. Washington had the burden of proving by a preponderance of evidence that Mr. Washington was guilty of at least one unprovoked and uncondoned act of abuse. See, Gilberti v. Gilberti, 338 So.2d 971, 974 (La.App. 4 Cir.1976). The trial court found she failed to carry this burden. We note from the record that Mrs. Washington’s testimony was unsupported by any evidence that she called the authorities, sought legal redress, sought the aid of a battered women’s program, or communicated the fact of the alleged assaults to family, friends or her Church. Although Mrs. Washington testified that she discussed her husband’s abusive behavior with her mother and sisters and members of Mr. Washington’s family, she did not offer their testimony to corroborate the allegation. There being no corroborating evidence or documentation of Mrs. Washington’s allegations, we cannot say that the trial court’s decision to reject Mrs. Washington’s unsupported testimony is manifestly erroneous or clearly wrong.
This assignment of error is without merit.
MRS. WASHINGTON’S SECOND ASSIGNMENT OF ERROR: The trial court was manifestly erroneous in denying her claim for contribution to her husband’s education.
1S It is uncontroverted that the trial court rendered the judgment of divorce on March 10, 1997. Seven months later, on October 17, 1997, Mrs. Washington filed a petition seeking, inter alia, reimbursement of direct financial contribution to Mr. Washington’s education and training, including but not limited to tuition, registration fees, living expenses, and related expenditures, citing La.C.C. art. 121. A copy of that petition is in the record.
Although the trial court concluded that Mrs. Washington’s initial claim for contributions to Mr. Washington’s education and training was made on October 22, 2001, we find that the petition filed in October 1997 states a claim for reimbursement pursuant to La.C.C. art. 121. Because as to this issue the record is complete[7], in the inter *905 est of judicial economy, we will review the evidence pertaining to this issue de novo.
In a divorce proceeding or thereafter, the court may order reimbursement to a spouse for his or her financial contribution during the course of the marriage to the education or training of the other spouse where that education or training increased the spouse’s earning power, to the extent that the claimant did not benefit during the marriage from the increased earning power. La.C.C. art. 121. Fault on the part of either spouse that contributed to the breakdown of the marriage is not relevant to a claim under this article. Revision Comment (c), 1990. The redactors make clear that the relevant equitable considerations weigh most heavily in favor of the contributing spouse in cases where the timing of the divorce prevents him or her from realizing benefits from the educational contributions. The usual situation liflthat has prompted the making of awards of this kind in other states has involved a wife who supported her husband through professional school, only to be divorced by him shortly after his graduation. Revision Comment (b), 1990.
Mr. Washington testified that prior to his marriage he earned a Bachelor of Science degree in Biology and Chemistry and attended graduate school at Southern University in Baton Rouge from 1975 to 1977 on a full fellowship. Mr. and Mrs. Washington testified that Mr. Washington pursued a Bachelor of Science, licensed registered nursing degree at Dillard University from 1982 until 1986, during the term of their marriage.
Mrs. Washington does not claim to have paid for Mr. Washington’s tuition, books or fees; however, she claims to have paid all of the household expenses during the time Mr. Washington was studying for his nursing degree. It is uncontroverted that during this time Mrs. Washington worked as a hair stylist, although the exact amount of her income is open to question. She admitted that, during the period of Mr. Washington’s attendance at Dillard, she helped pay no more than $200 monthly toward the expenses of her daughter by a previous marriage, who was then attending college.
Mr. Washington testified and provided documentary evidence that during the time he was pursuing his nursing degree, he held several full-time or part-time jobs. He worked a night shift, from about midnight to eight in the morning for LSU security, and also worked as a researcher at LSU, a custodian for Reliable Janitorial Service and throwing newspapers before school for John Chachere, an independent Times-Picayune newspaper dealer. He also worked at River Oaks Psychiatric Hospital, DePaul Hospital and Mercy Hospital as well as for the |MOrleans Parish School Board as a part-time substitute teacher. He earned money as a member of a United States military reserve unit.
He provided a statement from River Oaks Psychiatric Hospital attesting to his employment from December 26, 1988 through July 13, 1986 as a Psychiatric Attendant on the night shift, 11 p.m. to 7 a.m. He provided pay slips showing income in 1984 of $10,360.45; income in 1985 of $11,962.51 and income through mid-July 1986 of $6,627.64. Each year he authorized a $300 deduction for the United Way.
Mr. Washington provided Mr. John Chachere’s affidavit showing income from *906 his newspaper route of $100 per week from 1977 through 1982.
The affidavit of Leroy Taylor, owner of Reliable Janitorial Service, shows Mr. Washington earned $125 every two weeks from September 1981 through December 1982, or a total of $2060 for 1982.
Pay slips from DePaul Hospital show income of $2,284.24 for 1985; income of $8,761.98 for 1986, and income of $69.29 for 1987.
Pay slips from Mercy Hospital show income of $483.95 through June 1984; income of $745.03 through September 1985 and income of $50 in 1986.
■ Orleans Parish School Board records show income of $13,759.84 for 1981; income of $15,298.04 for 1982; income of $245 for 1982 and income of $300.42 for 1985.
A W-2 Wage and Tax Statement from the State of Louisiana, Deferred Compensation, shows 1983 income of $12,837.76.
Department of the Army income statements for various months in 1983 show income of $69.64, $139.28, $139.28, $139.28, $174.10, $139.28, $139.28,J^and $174.10. Similar statements for 1984 show income of $150.16, $150.16, $150.16, $187.70, $150.16, and $150.16.
Mr. Washington provided Charity Hospital payroll records showing that he had income of $10,724.74 for 1986 and income of $32,770.02 for 1987.
Mrs. Washington’s adjusted gross income for 1984 and 1986, as evidenced by her federal income tax return Form 1040, was, respectively, $22,654 and $9,007. She did not submit tax returns for 1982, 1983 or 1985.
Mr. Washington’s Dillard tuition of approximately $1650 per semester was paid through a combination of sources: a loan of $3,700 from Hotel Dieu hospital, which he testified and produced copies of receipts showing that he repaid; the Navy financed the balance of his loan upon his return from having participated in Desert Storm, and he received three semesters’ tuition and a monthly stipend of between $349 and $463.33 from a mental health provider scholarship provided by the State of Louisiana. He also produced evidence that, by consistent payments, he repaid his $7350 (principal) student loan financed through Citibank from 1986 to 1989. Mr. Washington produced a copy of a State of Louisiana form showing payment of $3,996 representing tuition and fees of $1,500, stipend of $2046 and travel of $50 in connection with his appointment to the Mental Health Nursing Project.
Our thorough and complete review of the record in its entirety convinces us that it does not support the contention that Mrs. Washington provided in substantial measure for the expenses of the community during the time Mr. Washington was pursuing his nursing degree. To the contrary, the record shows that Mr. Washington worked consistently to support the family and to finance his own education, working in the military, as a newspaper deliveryman, for four hospitals, |¡>afor a janitorial service, as an LSU security person and researcher and for the Orleans Parish Public Schools as a substitute teacher. His college expenses, moreover, were offset in substantial part by grants and stipends, and his income was clearly adequate to cover his extended payment of his student loan and contribution to the normal expenses of the community. In fact, the bulk of checks showing payment of his student loans bear dates in 1987, 1988 and 1989, well after the parties separated. We find that the record does not support Mrs. Washington’s claim that the expenses of the community fell solely upon her resources and that she is entitled to reim *907 bursement for contribution to educational expenses.
This assignment of error is -without merit.
MRS. WASHINGTON’S THIRD ASSIGNMENT OF ERROR: The trial court was manifestly erroneous in denying her claim for rental reimbursement.
In Louisiana, a spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community is not liable to the other spouse for rental unless otherwise agreed to by the spouses or ordered by the court. La.R.S. 9:374(C).
Mrs. Washington admitted on cross-examination that the parties had no agreement whereby Mr. Washington would pay rent for his use and occupancy of the marital domicile.
Mrs. Washington contends that this statute applies to bar rental reimbursement only where a spouse has been awarded the use and occupancy of the family residence. However, this interpretation is inconsistent with the clear | ^language of the statute, which precludes rental reimbursement both where there has been an award and also where the spouse merely “uses and occupies” the family home absent agreement of the parties that rental reimbursement is owed.
Mrs. Washington also contends that the fact that her petition filed in October 1997 seeks reimbursement of the fair rental value of the family home gives her a right to such reimbursement. The statute provides no such relief. Clearly, the statute allows rental reimbursement only upon the occurrence of one of two conditions: either the parties agreed to reimbursement, which both parties acknowledge was not the case herein, or the court ordered reimbursement, which just as clearly it did not.
Mrs. Washington contends that there is an apparent inequity that results from allowing reimbursement to Mr. Washington for one-half of the mortgage payments on the family residence, yet disallowing her claim for rental reimbursement. The answer to this dispute requires consideration of both the statutory provision regulating use of the co-owned family residence, La. R.S. 9:374(C), and the provision regulating the reimbursement right under La. C.C. art. 2365. Ball v. Ball, 32,851 (La.App. 2 Cir. 3/1/00), 757 So.2d 824.
In Ball, supra, the trial court denied the occupying spouse’s claim for reimbursement of the mortgage payments she made and denied the non-occupying spouse’s claim for retroactive rental assessment. The court of appeal reversed finding that to deny the occupying spouse reimbursement for mortgage payments effectively assessed her for rent to which the non-occupying spouse was not entitled because the occupancy of the community home was not the result of an agreement by the spouses or a court order. That logic applies here and supports the | atrial court’s decision denying Mrs. Washington’s rental reimbursement claim, yet allowing Mr. Washington reimbursement for one-half of the mortgage payments.
This assignment of error is without merit.
MRS. WASHINGTON’S FOURTH ASSIGNMENT OF ERROR: The trial court was manifestly erroneous in failing to order an equalizing cash payment from one party to the other.
Mrs. Washington is correct in pointing out that the judgment of the trial court fails to allocate the community’s major asset, the former matrimonial domicile, and fails to order an equalizing cash payment from whichever party will be shown to *908 have received the larger share of the community property.
The case is remanded to the trial court to resolve the issues of allocation of the former matrimonial domicile and an equalizing cash payment.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

. Although Mr. Washington testified to having served in the United States Naval Reserve, he submitted checks payable to him from the Department of the Army.

. See, LSA-Const. Art. 5, section 10(B).

. According to the transcript, these checks and receipts were submitted as "Exhibit No. 5”; however, they appear among the defendants' exhibits as "Exhibit No. 2.”

. Mr. Washington's counsel submitted duplicate copies of eighteen of these checks.

. Mr. Washington's counsel submitted duplicate copies of this invoice dated October 15, 1997.

. During oral argument, counsel for Mrs. Washington admitted that Mr. Washington was free from fault in the dissolution of the marriage, apparently abandoning herB client's claim that she abandoned the marital domicile because of Mr. Washington’s fault.

. When the entire record is before the appellate court, remand for a new trial produces *905 delay of the final outcome and congestion of crowded dockets while adding little to the judicial determination process. The Louisiana Constitution (Art. 5, § 10) expressly extends the jurisdiction of appellate courts in civil cases to the review of facts as well as law. Gonzales v. Xerox, supra, 320 So.2d at 165