# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 05-0290

DONNA C. MOORE

VERSUS

CHARLES L. MOORE, JR.

************

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT,
PARISH OF BEAUREGARD, NO. 99–0572,
HONORABLE STUART S. KAY, JR., DISTRICT JUDGE

************

## JIMMIE C. PETERS
## JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and Billy H. Ezell, Judges.

**AFFIRMED.**

C. Kerry Anderson
Anderson & Anderson
Post Office Box 1025
DeRidder, LA  70634
(337) 463-2100
COUNSEL FOR PLAINTIFF/APPELLEE:
    Donna C. Moore

Kathleen Kay
Attorney at Law
Post Office Box 2042
Lake Charles, LA  70602
(337) 439-7616
COUNSEL FOR DEFENDANT/APPELLANT:
    Charles L. Moore, Jr.

PETERS, J.

This appeal arises from a judgment partitioning the community property formerly existing between Charles L. Moore, Jr., and Donna C. Moore. Mr. Moore has appealed certain aspects of the judgment, and Mrs. Moore has answered the appeal. For the following reasons, we affirm.

## DISCUSSION OF THE RECORD

Charles L. Moore, Jr., and Donna C. Moore were married on April 23, 1978. On June 22, 1999, Mrs. Moore filed a petition for divorce, and the parties were divorced by judgment rendered on February 7, 2000, and signed on March 27, 2000. On December 4, 2000, Mrs. Moore filed a petition to partition the community property formerly existing between the parties, and on February 18, 2004, a partition trial was held. On September 16, 2004, the trial court rendered and signed a partition judgment in which it allocated the assets and liabilities between the parties and ordered Mr. Moore to pay Mrs. Moore an equalizing payment of $19,498.34 plus legal interest from February 18, 2004.

Mr. Moore has appealed the judgment, asserting that the trial court erred (1) in its recognition of certain alleged community liabilities assigned to Mrs. Moore and (2) in its award of certain reimbursements to Mrs. Moore. Mrs. Moore has answered the appeal, asserting that the trial court erred (1) in finding that she was not entitled to certain reimbursements and (2) in finding that she was not entitled to prejudgment interest on certain reimbursements awarded to her.

## OPINION

### *MR. MOORE'S APPEAL*

On appeal, Mr. Moore challenges the trial court's allocation to Mrs. Moore of certain alleged community liabilities. Specifically, the trial court allocated

community liabilities to Mrs. Moore totaling $115,845.31 and to Mr. Moore totaling $29,711.99. The allocation to Mrs. Moore included $108,845.31 in community liabilities to which the trial court determined that the parties had stipulated. Mr. Moore contends that the record does not contain such a stipulation and that Mrs. Moore failed to produce evidence to indicate that $28,406.57 of the $108,845.31 in community indebtedness even existed. Further, of the community liabilities to which the parties did not allegedly stipulate, the trial court allocated to Mrs. Moore a $7,000.00 debt owed by the Moores to Mrs. Moore's father, Don Wagner. Mr. Moore contends that the $7,000.00 debt had prescribed such that the trial court erred in assigning any value to it.

At the beginning of trial, before the witnesses testified, Mrs. Moore's attorney recited a lengthy stipulation in open court, stating the following, in relevant part, on the record in the presence of the court and Mr. Moore's attorney:

> At this time I would offer jointly a document entitled, "Second Amended Unified List of Assets and Debts" in the form of a stipulation between the parties, to help focus the direction of this hearing and reduce the disputed issues.
> . . . .
> The next page regarding the liabilities, there is a dispute as to Items No. 4 and No. 5, the Bell South bill and the loan owed to Mr. Don Wagner. Otherwise, it is stipulated that the value of the debts assumed by Ms. Moore is $108,845.31. It is agreed that the debts assumed by Mr. Moore are those as listed with a total of $29,711.99.

The trial court acknowledged on the record "a joint stipulation" by the parties, and Mr. Moore's attorney, who the record indicates was present, did not object or otherwise express disapproval of the purported stipulation. The record contains a copy of the "Second Amended Unified List of Assets/Debts" that is file stamped by the deputy clerk of court with the date of the trial, although the document does not

2

contain an exhibit number. In its reasons for judgment as well as the judgment itself, the trial court referred to and relied upon the stipulation.

Nevertheless, Mr. Moore contends that there was no stipulation because the "Second Amended Unified List of Assets/Debts" was unsigned, the document was never offered or accepted into evidence, and the transcript fails to reveal that he or his attorney expressly assented to the stipulation. In support of his position, Mr. Moore cites La.Civ.Code art. 3071, which provides:

> A *transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
> This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.

Mr. Moore also directs this court's attention to *Lavan v. Nowell*, 98-284 (La. 4/24/98), 708 So.2d 1052, for the proposition that a writing may not be transformed into an enforceable compromise by the trial court's admitting that writing into evidence.

Mr. Moore's argument is specious. In *Lavan*, the supreme court addressed the specific issue of whether a verbal out-of-court agreement between attorneys to settle a personal injury claim, followed by a letter by one attorney outlining the settlement agreed upon, constituted a valid compromise where the opposing attorney, at a hearing to enforce the compromise, admitted that the letter accurately described the verbal out-of-court agreement. In concluding that the parties had not confected a valid compromise, the court found that there was never any recitation of the verbal agreement in open court and that the letter outlining the agreement was never agreed

3

to in writing by opposing counsel. In that context, the court stated: "A writing that does not satisfy Article 3071 because it is not signed by both parties cannot be transformed into an enforceable compromise simply by the judge's admitting that writing into evidence and then having the parties admit that the writing basically sets forth the settlement verbally agreed to by the parties." *Id.* at 1053.

*Lavan* is readily distinguishable from the facts of the instant case. Importantly, unlike the facts in *Lavan*, the facts of the instant case do not involve merely a verbal agreement reached out of court; rather, the instant case involves a stipulation recited in open court on the record. Moreover, in open court, opposing counsel in *Lavan* refused to consent to the terms of the out-of-court verbal agreement, whereas in the instant case Mr. Moore's attorney allowed the stipulation to be entered on the record without objection and allowed the stipulation to be accepted by the court. Thus, it is abundantly clear that Mr. Moore, through his attorney, acquiesced in the stipulation. The writing, though not signed, merely evidenced in written form the oral recitation in open court. Accordingly, regardless of whether or not the writing was properly admitted into evidence as a joint exhibit, the stipulation at issue constituted a valid compromise. Therefore, Mr. Moore may not now assail it on appeal. Thus, we reject Mr. Moore's challenge to the allocation of liabilities to Mrs. Moore that were contained within the stipulation.

Regarding the disputed Wagner debt in the amount of $7,000.00, Mr. Moore does not deny the existence of the debt. In fact, at trial he acknowledged that he and Mrs. Moore had indeed borrowed $7,000.00 from Mr. Wagner. Rather, Mr. Moore contends that the trial court erred in assigning a value to this debt because it had prescribed.

4

In connection with his argument, Mr. Moore filed an exception of prescription with this appellate court on the day before oral argument. Louisiana Code of Civil Procedure Article 2163 provides in part that "[t]he appellate court may consider the peremptory exception filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record." While Mr. Moore filed the exception prior to submission of the case for decision, Mr. Wagner is not a party to these proceedings. Thus, the issue of the existence and validity of the debt vis-à-vis Mr. Wagner is not properly before this court on the exception of prescription. Accordingly, we will not consider at this juncture whether the Wagner debt has prescribed. *See generally Soileau v. Soileau*, 03-1282 (La.App. 3 Cir. 4/7/04), 870 So.2d 584.

Instead, Mrs. Moore presented evidence as to the existence and validity of the Wagner debt *as a community obligation*. The trial court chose to credit this evidence, and we find no manifest error in its decision to do so. Importantly, the trial court has broad discretion in adjudicating issues in partition proceedings. *Id.* Based on the evidence presented below, we find no abuse of the trial court's broad discretion in allocating the Wagner debt to Mrs. Moore.

Mr. Moore also contests the trial court's award of reimbursements to Mrs. Moore for her alleged payment of the mortgage on the family home, expenses related to the family swimming pool, and a sewer lien. Basically, he claims that Mrs. Moore failed to prove that she paid these expenses.

However, at the beginning of trial, the parties stipulated that Mrs. Moore had made payments on the mortgage, pool expenses, and sewer lien. Moreover, during the course of the trial, Mrs. Moore's attorney stated the following regarding the sewer

lien: "I do not believe that there is a dispute that Ms. Moore paid or one half of the amount that Ms. Moore paid on the sewer lien is $687.71. That's -- if I either said that or we can stipulate to that now, I will skip over that item." The trial court responded by stating: "That has been stipulated to, according to my notes." Once again, Mr. Moore's attorney did not object or otherwise express disapproval regarding the purported stipulation. Further, during the course of the trial, Mr. Moore's attorney expressly agreed on the record that Mrs. Moore had made payments for the swimming pool expenses. Specifically, Mrs. Moore's attorney offered a stipulation regarding the payment of house and pool expenses and submitted figures to the court in that regard. The court then asked Mr. Moore's attorney whether that was agreeable "[f]or purposes of establishing that these were paid, not that they are reimbursable," to which Mr. Moore's attorney replied, "Yes, absolutely." Thus, as set forth above, we reject Mr. Moore's challenge as to the payment of these debts by Mrs. Moore.

Mr. Moore contests the reimbursement award to Mrs. Moore for payments she made on the home mortgage on the additional basis that "[u]nder the clear holding of the entirety of this court in *Sheridon* [*v. Sheridon*, 03-103 (La.App. 3 Cir. 2/4/04), 867 So.2d 38], no reimbursement is ever due for payment of community obligations made with separate funds *after* termination of the community – only before."

Mr. Moore misconstrues our *en banc* holding in *Sheridon*. In *Sheridon*, we held that La.Civ.Code art. 2365, providing for reimbursement to a spouse where the separate property of that spouse has been used to satisfy a community obligation, pertains solely to debts paid during the marriage, and not to those paid after termination of the community. Additionally, in *Sheridon*, in the context of

6

determining whether the husband was required to reimburse the wife one-half of the amount she paid on the note on a community vehicle following termination of the community, we adhered to our prior jurisprudence that held that a spouse is not entitled to reimbursement for payments made on a note on a community vehicle following termination of the community when the spouse who made the payments also had the exclusive use of the vehicle. "[A]n automobile rapidly depreciates so that its use is directly related to its depreciation. Equity dictates that [the spouse with exclusive use of a vehicle] be charged for the full amount of maintaining an asset of which he had exclusive use while that asset steadily declined in value." *Davezac v. Davezac*, 483 So.2d 1197, 1199 (La.App. 4 Cir. 1986) (citation omitted).

Importantly, we did not hold in *Sheridon* that a spouse who pays the mortgage note on a family home following the termination of the community is not entitled to reimbursement for one-half of the amount paid. *See Philmon v. Philmon*, 04-673 (La.App. 3 Cir. 11/10/04), 886 So.2d 1222. Unlike a vehicle, "[t]he rapid depreciation concept is not present for a home, the value of which more typically appreciates." *Gill v. Gill*, 39,406, p. 20 (La.App. 2 Cir. 3/9/05), 895 So.2d 807, 818-19. Further, La.R.S. 9:374(C) provided during the pendency of these proceedings:[1]

---

[1]By 2004 La. Acts No. 668, § 1, the legislature amended La.R.S. 9:374(C) to provide:

A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, except as hereafter provided. If the court awards use and occupancy to a spouse, it shall at that time determine whether or not to award rental for the use and occupancy and, if so, the amount of the rent. The parties may agree to defer the rental issue for decision in the partition proceedings. If the parties agreed at the time of the award of use and occupancy to defer the rental issue, the court may make an award of rental retroactive to the date of the award of use and occupancy.

> A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, unless otherwise agreed by the spouses or ordered by the court.

Mrs. Moore had the use and occupancy of the family home, and the parties had no agreement and no court order was entered regarding rental. Thus, Mrs. Moore was not liable to Mr. Moore for rental for her use and occupancy. To disallow Mrs. Moore reimbursement for one-half of the mortgage payments she made would be to effectively charge her for the value of her use of the home by retroactively assessing her rent for her occupancy, without an agreement by the parties to do so and without a court order, in violation of La.R.S. 9:374(C) and the rule established in *McCarroll v. McCarroll*, 96-2700 (La. 10/21/97), 701 So.2d 1280 (holding that retroactive assessment of rent to a spouse is inappropriate absent an agreement by the spouses or a court order). *See generally Ball v. Ball*, 32,851 (La.App. 2 Cir. 3/1/00), 757 So.2d 824. Accordingly, the trial court did not err in awarding Mrs. Moore reimbursement for the mortgage payments.

Finally, Mr. Moore challenges the trial court's award of a "reimbursement" to Mrs. Moore for a portion of Mr. Moore's retirement benefits. At the beginning of trial, the parties stipulated as to Mrs. Moore's entitlement to a share of Mr. Moore's military retirement benefits, although Mrs. Moore's attorney noted that there was a dispute "as to the exact amount of the military retirement benefits due to Ms. Moore," stating that "[t]here is a $200 discrepancy between my numbers and Mr. Moore's numbers." During the course of the trial, Mrs. Moore's attorney stated: "Your Honor, before I go any further, I was just asking [Mr. Moore's attorney] -- I was going to ask Mr. Moore some questions about his military service; but I understand

8

that we are in agreement that with regard to his military service and the overlapping marriage. Her Sims formula share would be 49.2 percent of that; and as long as we have an agreement on that, then there is no need to ask him any further questions about his military service." Again, Mr. Moore's attorney did not object to or otherwise express disapproval of the joint stipulation. The trial court awarded Mrs. Moore 49.2% of the retirement benefits based on the stipulation. In contending on appeal that Mrs. Moore is not entitled any of the military retirement benefits, Mr. Moore is attempting to assail an award made pursuant to a stipulation constituting a valid compromise. Accordingly, we reject this assignment of error.

### MRS. MOORE'S ANSWER TO THE APPEAL

Mrs. Moore has answered the appeal, contending that the trial court erred in ruling that she was not entitled to (1) reimbursements of $3,753.73 and $5,241.84 for her payment following termination of the community of one-half of the notes on the 1998 Taurus and 1997 Mazda community vehicles, respectively, inclusive of interest and (2) prejudgment interest on her reimbursement claim for one-half of the mortgage payments on the family home made after termination of the community.

In declining to award Mrs. Moore reimbursement for her payment of the notes on the vehicles at issue, the trial court relied on *Sheridon*, 867 So.2d 38, in which we held, as stated above, that a spouse is not entitled to reimbursement for notes paid on a community automobile when that spouse had the exclusive use of the automobile following the termination of the community. In the instant case, Mrs. Moore testified that she had possession and exclusive use of the Taurus from the date of the termination of the community. As such, *Sheridon* dictates that Mrs. Moore is not entitled to reimbursement for payments she made on the Taurus. Mrs. Moore's

9

reliance on La.Civ.Code art. 2365 is misplaced because, as explained above, that Article pertains to debts paid during the marriage, not to those paid after termination of the community. Further, Mrs. Moore's reliance on *Nash v. Nash*, 01-766 (La.App. 3 Cir. 10/31/01), 799 So.2d 829, is also misplaced, as we overruled *Nash* in *Sheridon*. Thus, we affirm the trial court's ruling in that regard.

Mrs. Moore testified that the couple's daughter had possession of the Mazda and that the daughter had wrecked the vehicle in November of 2002. Although Mrs. Moore made payments on the note on the Mazda and did not have exclusive use of the Mazda following the termination of the community, it is clear that she did receive and cash the insurance settlement check in connection with the wrecked Mazda, and it does not appear that she accounted for the settlement proceeds in the partition proceedings. Mr. Moore did not receive any of the proceeds from the settlement check, and the testimony is in dispute as to the use of those proceeds. Based on the specific facts in the record before us, we do not find that the trial court abused its discretion in failing to award Mrs. Moore reimbursement for the payments she made on the note on the Mazda where she received the insurance proceeds and has made no showing that the amount she received was insufficient to reimburse her for the payments she made on the Mazda.

Finally, Mrs. Moore contends that the trial court erred in failing to award her prejudgment interest on her reimbursement claim for one-half of the mortgage payments she made on the family home. The trial court awarded Mrs. Moore judicial interest from the date of judgment but rejected her claim for prejudgment interest, on the basis of *Reinhardt v. Reinhardt*, 99-723 (La. 10/19/99), 748 So.2d 423. In *Reinhardt*, the supreme court stated: "Interest on equalizing payments is due only

10

from the date of the judgment of partition." *Id.* at 427. In accordance with *Reinhardt*, we find no error in the trial court's ruling in this regard.

## DISPOSITION

For the foregoing reasons, we affirm the judgment below in all respects and assess costs of this appeal equally between the parties.

**AFFIRMED.**